MARSHAL, Ex parte. See Case No. 14,174.

## Case No. 9,123.

### In re MARSHALL.

[1 Lowell, 462;[1] 4 N. B. R. 106 (Quarto, 27).]

District Court, D. Massachusetts. Aug., 1870.

BANKRUPTCY—DISCHARGE—PROPERTY LOST GAMING—ACQUIRED.

Property acquired in gaming is assets, which, if the bankrupt spends in gaming, he loses his discharge.

In bankruptcy.

S. J. Thomas & G. F. Verry, for objecting creditors.

J. Nickerson, for debtor.

LOWELL, District Judge. The objection to the bankrupt's discharge is that he lost a part of his property in gaming. The evidence tends to show that he was interested in a gambling house in Boston, and that he did lose money at that house and in some others like it. The preponderance of evidence supports the allegation of losses sustained in that way. On the other hand, the evidence for the defence tends to show that the bankrupt had lost all his property some years ago, so that whatever he may from time to time have made or lost, he is no worse off now than if he had never lost at all. From this the argument is deduced that he never had any property to which creditors had a right to trust, and cannot justly be said to have lost any property in gaming. It is said that, if the law should be rigidly applied in such a case, the creditors would receive an undue advantage, because they could always prevent the discharge of a person to whom they had given credit with a full knowledge of the character of the business, and an understanding of its hazardous nature.

So far as this argument applies to gambling debts the bankrupt would have the remedy in his own hands, because the debts, if ob-

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

jected to, could not be proved against his estate; as it regards other debts, much of its force would depend on the circumstances under which each particular debt was contracted. A creditor may know that his debtor has property without knowing how he acquired it, or he may lend him money or sell him goods for some legitimate purpose without reference to his occupation. And such are some, at least, of the debts in this case. I cannot limit the general language of the statute, though its effect may be, and I think is, to consider property acquired in gaming to be assets, which, if the bankrupt spend in gaming, he loses his discharge. It is impossible to look into the mode in which such property as the statute speaks of has been acquired. If property once in the possession of the bankrupt is spent in gaming, which, if not so spent, would be assets in bankruptcy, the case is made out. It is too late after it is spent to say that it was unlawfully acquired, or acquired in any particular way, or that creditors are no worse off on the whole. The case does not by any means show that whatever the defendant won was lost immediately, but rather that he had considerable sums at times, which he afterwards lost. I cannot distinguish such losses from those which any other debtor might sustain in a similar way. The statute is clear and explicit, and cannot be construed away in favor of one whose profession is gambling, though its operation may be somewhat severe in such a case. Neither the knowledge of his creditors of his course of business, nor any intent on his or their part, is material. The fact only can be inquired into. Nor does the law in the matter of discharge invest the court with discretion, as it does so largely in England. It is a mere question of legal right. Discharge refused.